GEORGE S. CARDONA
United States Attorney
THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division
BRUCE H. SEARBY
Assistant United States Attorney
California Bar Number: 183267
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5423
     Facsimile: (213) 894-6436
     E-mail: bruce.searby@usdoj.gov

Attorney for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          v.<br><br>JULIE DIAZ, and GREG WONG,<br><br>                    Defendants. | ) CR No. 06-530(A)-SJO<br>)<br>) PLEA AGREEMENT FOR DEFENDANT<br>) GREG WONG<br>)<br>)<br>)<br>)<br>)<br>) |

    1.    This constitutes the plea agreement between Greg Wong
("defendant") and the United States Attorney's Office for the
Central District of California ("the USAO") in the above-
captioned case.  This agreement is limited to the USAO and cannot
bind any other federal, state or local prosecuting,
administrative or regulatory authorities.

                                PLEA

    2.    Defendant agrees to plead guilty to Defendant agrees to
plead guilty to count one of the First Superseding Indictment in

NATURE OF THE OFFENSE

3.    In order for defendant to be guilty of conspiracy to commit education funding fraud involving an amount in excess of $200, in violation of 18 U.S.C. § 371 and 20 U.S.C. § 1097(a), the following must be true:  (1) There was agreement between two or more persons to commit education funding fraud involving an amount in excess of $200, in violation of 20 U.S.C. § 1097(a); (2) defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.  In order for there to be a violation of 20 U.S.C. § 1097(a), the following must be true:  (1) A person knowingly and willfully embezzled, misapplied, stole, or obtained from the United States Department of Education educational grant funds with a value of over $200; and (2) the person did so by fraud, false statement, or forgery.  Defendant admits that defendant is, in fact, guilty of this offense as described in count one of the First Superseding Indictment.

PENALTIES AND RESTITUTION

4.    The statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 371 is: five years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of

$100.

5.   Supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

6.   Defendant also understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury.

7.   Defendant further understands that the conviction in this case may subject defendant to various collateral consequences, including but not limited to, deportation, revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

8.   Defendant understands that defendant will be required to pay full restitution to the victim of the offense, which the parties currently anticipate to be in the amount of $2,897,893. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the amount of restitution

is not restricted to the amounts alleged in the count to which defendant is pleading guilty and may include losses arising from charges not prosecuted pursuant to this agreement as well as all relevant conduct in connection with those charges. Defendant further agrees that defendant will not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

FACTUAL BASIS

9. Defendant and the USAO agree and stipulate to the statement of facts attached to this agreement as Exhibit A. This statement of facts includes facts sufficient to support a plea of guilty to the charge described in this agreement and to establish the sentencing guideline factors set forth in paragraph 12 below. It is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to defendant that relate to that conduct.

WAIVER OF CONSTITUTIONAL RIGHTS

10. By pleading guilty, defendant gives up the following rights:

a) The right to persist in a plea of not guilty.

b) The right to a speedy and public trial by jury.

c) The right to the assistance of legal counsel at trial, including the right to have the Court appoint counsel for defendant for the purpose of representation at trial. (In this regard, defendant understands that, despite his plea of guilty, he retains the right to be represented by counsel - and, if

4

necessary, to have the court appoint counsel if defendant cannot
afford counsel - at every other stage of the proceedings.)

        d)   The right to be presumed innocent and to have the
burden of proof placed on the government to prove defendant
guilty beyond a reasonable doubt.

        e)   The right to confront and cross-examine witnesses
against defendant.

        f)   The right, if defendant wished, to testify on
defendant's own behalf and present evidence in opposition to the
charges, including the right to call witnesses and to subpoena
those witnesses to testify.

        g) The right not to be compelled to testify, and, if
defendant chose not to testify or present evidence, to have that
choice not be used against defendant.

   By pleading guilty, defendant also gives up any and all
rights to pursue any affirmative defenses, Fourth Amendment or
Fifth Amendment claims, and other pretrial motions that have been
filed or could be filed.

SENTENCING FACTORS

   11.  Defendant understands that the Court is required to
consider the factors set forth in 18 U.S.C. § 3553(a)(1)-(7),
including the kinds of sentence and sentencing range established
under the United States Sentencing Guidelines ("U.S.S.G." or
"Sentencing Guidelines"), in determining defendant's sentence.
Defendant understands that the Sentencing Guidelines are only
advisory, and that after considering the Sentencing Guidelines,

5

the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute for the crimes of conviction.

12. Defendant and the USAO agree that the 2000 Sentencing Guidelines apply and stipulate to the following applicable sentencing guideline factors:

| | | | |
|---|---|---|---|
| Base Offense Level | : | 6 | [U.S.S.G. § 2F1.1(a)] |
| Specific Offense Characteristics | | | |
| (loss more than $2,500,000) | : | +13 | [U.S.S.G. § 2F1.1(b)(1)(N)] |
| (more than minimal planning) | : | +2 | [U.S.S.G. § 2F1.1(b)(2)] |
| Acceptance of Responsibility | : | -3 | [U.S.S.G. §3E1.1 (b)] |

Total Offense Level : 18

The USAO will agree to a downward adjustment for acceptance of responsibility (and, if applicable, move for an additional level under § 3E1.1(b)) only if the conditions set forth in paragraph 15 are met. Subject to paragraph 16, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments or departures, relating to either the applicable Offense Level or the Criminal History Category, be imposed. If, however, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant

prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section.

Defendant, pursuant to the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7), further reserves the right to argue for a sentence below the sentencing range established by the Sentencing Guidelines.

13. There is no agreement as to defendant's criminal history or criminal history category.

14. The stipulations in this agreement do not bind either the United States Probation Office or the Court. Both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the calculation of the sentence, and (c) argue on appeal and collateral review that the Court's sentencing guidelines calculations are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case.

DEFENDANT'S OBLIGATIONS

15. Defendant agrees that he will:

a) Plead guilty as set forth in this agreement.

b) Not knowingly and willfully fail to abide by all sentencing stipulations contained in this agreement.

c) Not knowingly and willfully fail to: (i) appear as

7

ordered for all court appearances, (ii) surrender as ordered for service of sentence, (iii) obey all conditions of any bond, and (iv) obey any other ongoing court order in this matter.

d) Not commit any crime; however, offenses which would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this agreement.

e) Not knowingly and willfully fail to be truthful at all times with Pretrial Services, the U.S. Probation Office, and the Court.

f) Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay.

## THE USAO'S OBLIGATIONS

16. If defendant complies fully with all defendant's obligations under this agreement, the USAO agrees:

a) To abide by all sentencing stipulations contained in this agreement.

b) Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not to further prosecute defendant for violations of federal law arising out of defendant's conduct described in the stipulated factual basis set forth in Exhibit A. Defendant understands that the USAO is free to prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, where

the sentence should fall within that range, the propriety and
extent of any departure from that range, and the determination of
the sentence to be imposed after consideration of the sentencing
guidelines and all other relevant factors.

c) Not to oppose a request by defendant for a two-level
downward departure on the basis that the loss amount overstates
the seriousness of the offense for the following reason:  While
the students for whom defendant and his coconspirators
fraudulently obtained Department of Education grant funding were
not students at CBI, the students were actually enrolled at
another educational institution and receiving instruction at that
institution.

d) At the time of sentencing, provided that defendant
demonstrates an acceptance of responsibility for the offense up
to and including the time of sentencing, to recommend a two-level
reduction in the applicable sentencing guideline offense level,
pursuant to U.S.S.G. § 3E1.1, and to recommend and, if necessary,
move for an additional one-level reduction if available under
that section.

<u>BREACH OF AGREEMENT</u>

17.  If defendant, at any time between the execution of this
agreement and defendant's sentencing on a non-custodial sentence
or surrender for service on a custodial sentence, knowingly
violates or fails to perform any of defendant's obligations under
this agreement ("a breach"), the USAO may declare this agreement
breached.  If the USAO declares this agreement breached, and the

Court finds such a breach to have occurred, defendant will not be able to withdraw defendant's guilty plea, and the USAO will be relieved of all of its obligations under this agreement.

18. Following a knowing and willful breach of this agreement by defendant, should the USAO elect to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a) Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the commencement of any such prosecution or action.

b) Defendant gives up all defenses based on the statute of limitations, any claim of preindictment delay, or any speedy trial claim with respect to any such prosecution, except to the extent that such defenses existed as of the date of defendant's signing of this agreement.

c) Defendant agrees that: i) any statements made by defendant, under oath, at the guilty plea hearing; ii) the stipulated factual basis statement in this agreement; and iii) any evidence derived from such statements, are admissible against defendant in any future prosecution of defendant, and defendant shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from any statements should be suppressed or are inadmissible.

10

## LIMITED MUTUAL WAIVER OF APPEAL AND COLLATERAL ATTACK

19. Defendant gives up the right to appeal any sentence imposed by the Court, including any order of restitution, and the manner in which the sentence is determined, provided that (a) the sentence is within the statutory maximum specified above and is constitutional, and (b) the Court imposes a sentence within or below the range corresponding to a total offense level of 16 and the applicable criminal history category as determined by the Court.

20. The USAO gives up its right to appeal the Court's sentence, provided that the Court imposes a sentence within or above the range corresponding to a total offense level of 16 and the applicable criminal history category as determined by the Court.

## COURT NOT A PARTY

21. The Court is not a party to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' stipulations. Even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from any stipulation, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. No one - not the prosecutor, defendant's attorney, or the Court - can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the

11

statutory maximum.

NO ADDITIONAL AGREEMENTS

22.  Except as set forth herein, there are no promises, understandings or agreements between the USAO and defendant or defendant's counsel.  Nor may any additional agreement, understanding or condition be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

23.  The parties agree and stipulate that this Agreement will be considered part of the record of defendant's guilty plea hearing as if the entire Agreement had been read into the record of the proceeding.

This agreement is effective upon signature by defendant and an Assistant United States Attorney.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA

GEORGE S. CARDONA
United States Attorney

_____          8-17-07
BRUCE H. SEARBY                           Date
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  My attorney has advised me of my rights, of possible defenses, of the Sentencing Guideline provisions, and of the consequences of

12

1  entering into this agreement.  No promises or inducements have
2  been made to me other than those contained in this agreement.  No
3  one has threatened or forced me in any way to enter into this
4  agreement.  Finally, I am satisfied with the representation of my
5  attorney in this matter.
6
7  _see attached_____      _____
   GREG WONG                       Date
8  Defendant
9
10     I am Greg Wong's attorney.  I have carefully discussed every
11 part of this agreement with my client.  Further, I have fully
12 advised my client of his rights, of possible defenses, of the
13 Sentencing Guidelines' provisions, and of the consequences of
14 entering into this agreement.  To my knowledge, my client's
15 decision to enter into this agreement is an informed and
16 voluntary one.
17
18 _____           _8-15-07_____
   WINSTON K. McKESSON, ESQ.        Date
19 Counsel for Defendant
   Greg Wong
20
21
22
23
24
25
26
27
28

1  entering into this agreement.  No promises or inducements have
2  been made to me other than those contained in this agreement.  No
3  one has threatened or forced me in any way to enter into this
4  agreement.  Finally, I am satisfied with the representation of my
5  attorney in this matter.
6
7  _____*greg Wang*_____              AUGUST 14, 2007
   GREG WONG                          Date
8  Defendant
9
10     I am Greg Wong's attorney.  I have carefully discussed every
11 part of this agreement with my client.  Further, I have fully
12 advised my client of his rights, of possible defenses, of the
13 Sentencing Guidelines' provisions, and of the consequences of
14 entering into this agreement.  To my knowledge, my client's
15 decision to enter into this agreement is an informed and
16 voluntary one.
17
18 _____*see attached*_____           _____
   WINSTON K. McKESSON, ESQ.          Date
19 Counsel for Defendant
   Greg Wong
20
21
22
23
24
25
26
27
28                        13

## STIPULATED STATEMENT OF FACTS

A.  The Department of Education Student Grant Programs

1.  The United States Department of Education ("DOE") administers federal student financial assistance programs.  Among these programs are two federal grant programs known as Pell Grants and Supplemental Education Opportunity ("SEO") Grants (collectively, Pell Grants and SEO Grants are referred to hereafter as "Education Grants").  Education Grants, unlike student loans, do not have to be paid back by the student.

2.  In order to be awarded Education Grant funds, a student must be enrolled in an eligible program at an eligible institution.  DOE certifies institutions and programs as eligible if DOE determines that the institutions and programs meet certain criteria set forth in the Code of Federal Regulations.

3.  DOE program regulations specify eligibility requirements and application procedures for students.  In order to apply for Education Grant funds, a student must submit to DOE, either directly, or indirectly through an eligible institution, an application known as a Free Application for Federal Student Aid ("FAFSA").  The FAFSA requires the student to submit information used by DOE to determine the student's eligibility for federal financial assistance.

4.  Institutions may hire a separate private entity known as a third party financial aid servicer ("third party servicer") to assist the institution with the federal financial aid process.

14

The services provided by third party servicers vary, but may include determining student financial aid eligibility, handling financial aid disbursements, and providing other services. Institutions have the ability to request authorized Education Grant funds directly from DOE, or they may have the third party servicer request the funds from DOE on the institution's behalf.

B.  Institutions And Related Entities

1.  San Gabriel Polytechnic, doing business as ("d.b.a.") California Business Institute ("CBI"), was an institution located in El Monte, California.  CBI was eligible to receive Education Grant funds from approximately May 7, 1987 until it lost its eligibility on approximately November 7, 2001.

2.  United Computer College, Inc., d.b.a. United Education and Computer College ("UECC"), was an institution located in Los Angeles, California.  UECC was eligible to receive Education Grant funds from approximately March 27, 1996 until it lost its eligibility on approximately August 17, 1998.

3.  Global Consulting Services ("Global") was an entity associated with UECC.  Global was formed to conceal the receipt by UECC of Education Grant funds from CBI.

4.  Mesa Institute ("Mesa") was an institution located in Orange, California.  Mesa never was eligible to receive Education Grant funds.

5.  Max Affiliates was an entity associated with Mesa.  Max Affiliates was formed to conceal the receipt by Mesa of Education Grant funds from CBI.

15

1    6.   R. Gonzalez Management, Inc. ("RGM") was contracted by
2  CBI as a third party servicer.   Pursuant to the contract between
3  CBI and RGM, CBI was responsible for verifying the accuracy of
4  the information that CBI submitted to RGM and that RGM ultimately
5  submitted to DOE.

6  C.   The Defendant And Coconspirators

7    1.   Defendant Greg Wong ("defendant Wong") was the owner and
8  Chief Executive Officer of CBI from approximately 1985 until
9  approximately November 2001.

10   2.   Coconspirator Julie Diaz was the Financial Aid Officer
11  at CBI from about October 28, 1998 until sometime after September
12  10, 2001.

13   3.   Coconspirator D.K.W. was a financial aid consultant for
14  CBI from approximately March 11, 1998 until approximately October
15  2001, for UECC from approximately November 2, 1998 until on or
16  after approximately July 24, 2001, and for Mesa from on or before
17  approximately February 18, 2000 until approximately November 2001
18  or later.

19   4.   Coconspirator H.S.Y. was the owner of UECC from
20  approximately 1990 until approximately 2002, and the operator of
21  Global from approximately 1998 until July 31, 2001.

22   5.   Coconspirator L.P.N. was the owner and director of Mesa
23  from approximately 1996 until approximately 2004, and the owner
24  of Max Affiliates from approximately 1998 until approximately
25  2004.   Coconspirator L.P.N. was the director of CBI from

26

27

28                              16

approximately October 28, 1998 until approximately July 2001 or later.

D.   The Scheme

    1.  Beginning in about October 1998, and continuing until around September, 2001, defendant Wong and coconspirators Julie Diaz, D.K.W., H.S.Y., and L.P.N., and others agreed to and did carry out a scheme to enable UECC and Mesa students to obtain Education Grant Funds to be paid to UECC and Mesa, even though UECC and Mesa were not eligible to receive Education grant funding.  The scheme in essence was to be carried out by falsely making it appear to DOE that UECC and Mesa students were attending CBI and, thus, were eligible to receive Education Grant funds.  Defendant Wong and the other coconspirators knew that the students were not attending CBI and that the scheme was illegal.

    2.  Defendant Wong and the other coconspirators did the following, among other things, to carry out the scheme:

        a.  Defendant Wong and coconspirators Julie Diaz, D.K.W., and L.P.N. operated, and assisted in operating, CBI and made sure that CBI remained eligible to receive Education Grant funds from DOE.

        b.  On August 18, 1999 coconspirator Julie Diaz sent a letter to defendant Wong outlining a plan to cover up the receipt of education grant funds by CBI for UECC students.

        c.  Defendant Wong and coconspirators D.K.W., H.S.Y., and L.P.N. created and maintained a written contract between CBI and UECC, under which CBI would pay UECC to provide classes to

17

CBI students. In doing so, however, the conspirators knew that, in fact, UECC would not be providing classes to CBI students and that the contract would falsely make it appear that CBI would be making payments to UECC that were legitimate and consistent with DOE regulations. Defendant Wong and coconspirators L.P.N. and D.K.W. created a similar contract for the same reason between CBI and Mesa.

d. Defendant Wong and coconspirators Julie Diaz, L.P.N., D.K.W., and H.S.Y. recruited and enrolled students at Mesa and UECC and arranged for FAFSA applications for Education Grant funds to be submitted to DOE that would falsely state to DOE that students attending UECC and MESA were attending CBI. In filling out the applications, students sometimes were asked to leave blank the identity of the institution. Coconspirator Julie Diaz and others then would enter CBI's name or institution code onto the FAFSA applications. On other occasions, UECC and Mesa students were told to write in the identifying information for CBI. Coconspirator Julie Diaz and others would request through RGM that DOE disburse funds to CBI for students actually attending UECC and Mesa. A portion of those funds then would be paid by CBI to UECC and Mesa.

e. Defendant Wong and coconspirators D.K.W. and H.S.Y. used Global to conceal the payment of Education Grant funds from CBI to UECC by falsely making it appear that Global and UECC were providing services to CBI. Coconspirator Julie Diaz and others created

18

false invoices to make it appear that Global and UECC were
providing services to CBI.

     f.   On January 31, 2000, defendant Wong sent a memo to
coconspirator Julie Diaz requesting a report about, among other
things, the amounts of Pell Grant funds paid to CBI and UECC in
1999, and requesting various other information about payments
made to, and received by CBI, from UECC and Global.  That same
day, coconspirator Julie Diaz filled out a response to defendant
Wong's memo in which coconspirator Julie Diaz reported to
defendant Wong, among other things, the amounts of Pell Grant
funds paid to CBI and UECC in 1999, and provided other
information about payments made to, and received by CBI, from
UECC and Global.

     g.   On June 15, 2000, coconspirator L.P.N. sent a memo
to defendant Wong and coconspirator D.K.W. concerning, among
other things, how to allocate Education Grant funds to Global.

     h.   Defendant Wong and coconspirators D.K.W. and L.P.N.
used Max Affiliates to conceal the payment of Education Grant
funds from CBI to Mesa by falsely making it appear that Max
Affiliates and Mesa were providing services to CBI.
Coconspirator Julie Diaz and others created false invoices to
make it appear that Max Affiliates and Mesa were providing
services to CBI.

     i.   Coconspirators H.S.Y. and L.P.N. made payments to
defendant Wong and CBI.  The amount of the payments was based on
the amount of Education Grant funds paid to CBI for UECC and Mesa

19

students and was calculated using rates previously agreed upon by
defendant Wong and coconspirators H.S.Y., L.P.N., and D.K.W.

j.   On July 2, 2001, defendant Wong signed checks
written on CBI's escrow account bearing the following check
numbers, in the following amounts, and made payable to CBI for
the benefit of the following students attending UECC and Mesa,
all of which checks were deposited into a CBI operating account:

| Check No. | Amount | Student | Institution |
|-----------|--------|---------|-------------|
| 5289 | $2,375 | W.S.H. | UECC |
| 5291 | $1,875 | S.C.H. | UECC |
| 5293 | $1,958 | M.D.J. | Mesa |
| 5298 | $2,375 | K.K.K. | UECC |
| 5304 | $2,375 | H.L. | UECC |
| 5312 | $1,958 | E.M. | Mesa |
| 5313 | $1,958 | A.M.M. | Mesa |
| 5318 | $1,725 | E.M. | Mesa |
| 5344 | $1,725 | J.R.Z. | Mesa |
| 5350 | $1,958 | R.M.G. | Mesa |
| 5353 | $500 | S.C.H. | UECC |

k.   On July 3, 2001, defendant Wong signed checks
written on a CBI operating account bearing the following check
numbers, in the following amounts, and made payable to Max
Affiliates:

| Check No. | Amount |
|-----------|--------|
| 3809 | $8,600 |
| 3810 | $9,500 |

20

| | |
|---|---|
| 3811 | $9,900 |
| Check No. | Amount |
| 3812 | $3,289 |

1. On July 5, 2001, defendant Wong signed checks written on a CBI operating account bearing the following check numbers, in the following amounts, and made payable to Global:

| Check No. | Amount |
|---|---|
| 3542 | $8,750 |
| 3543 | $8,750 |
| 3544 | $8,750 |

3. As a result of the conspiracy, CBI received from the DOE at least $2,158,844 in Education Grant funds on behalf students actually attending UECC and $739,049 in Education Grant funds on behalf of students actually attending Mesa.

21

I, **KAREN GLANZ,** declare:

That I am a citizen of the United States and resident or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, United States Courthouse, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of eighteen years, and am not a party to the above-entitled action;

That I am employed by the United States Attorney for the Central District of California who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy: **PLEA AGREEMENT FOR DEFENDANT GREG WONG** service was:

Winston McKesson, Esq.
315 S Beverly Dr
Beverly Hills, CA 90212

[] Placed in a closed envelope, for collection and interoffice delivery addressed as follows:

[**XX**] Placed in a sealed envelope for collection and mailing via United States Mail, addressed as follows:

[] By hand delivery addressed as follows:

[ ] By facsimile as follows:

[] By messenger as follows:

[] By federal express as follows:

This Certificate is executed on **August 17, 2007,** at Los Angeles, California.

I certify under penalty of perjury that the foregoing is true and correct.

_Karen Glanz_

**KAREN GLANZ**