THOMAS P. O'BRIEN
United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
BRUCE H. SEARBY (SBN 183267)
Assistant United States Attorney
    1100 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-5423
    Facsimile: (213) 894-6269
    bruce.searby@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>JULIE DIAZ, et al.,<br><br>　　　　　Defendants. | ) CR No. 06-530(A)-FMC<br>)<br>) GOVERNMENT'S SENTENCING MEMORANDUM<br>) FOR DEFENDANT GREG WONG AND REPLY<br>) TO DEFENDANT WONG'S SENTENCING<br>) MEMORANDUM<br>)<br>) Sent. Date: November 24, 2008<br>) Sent. Time: 2:00 p.m.<br>) |

Plaintiff United States of America, through its counsel of record, the United States Attorney for the Central District of California, hereby submits its memorandum regarding sentencing of defendant Greg Wong ("Wong"), in which the government also replies to defendant Wong's sentencing position filed on October 24, 2007.

///
///
///

The government respectfully requests the opportunity to
supplement its position as may become necessary.

DATED: November 10, 2008         Respectfully submitted,


                                 THOMAS P. O'BRIEN
                                 United States Attorney

                                 CHRISTINE C. EWELL
                                 Assistant United States Attorney
                                 Chief, Criminal Division

                                 /s/ Bruce H. Searby
                                 _____
                                 BRUCE H. SEARBY
                                 Assistant United States Attorney

                                 Attorneys for Plaintiff
                                 UNITED STATES OF AMERICA

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . iii

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . 1

II. FACTS . . . . . . . . . . . . . . . . . . . . . . . . 2

    A. The Department of Education Student Grant Programs . 2

    B. Institutions And Related Entities . . . . . . . . . 2

    C. The Defendant And Coconspirators . . . . . . . . . 3

    D. The Scheme to Misapply Education Grant funds . . . . 4

III. DISCUSSION . . . . . . . . . . . . . . . . . . . . . 7

    A. THE GOVERNMENT CALCULATES THE SENTENCING GUIDELINES TO INCLUDE AN ADDITIONAL DOWNWARD DEPARTURE OF TWO OFFENSE LEVELS FOR OVERSTATEMENT OF LOSS . . . . . . . . . . . 7

    B. APPLICATION OF THE STATUTORY SENTENCING FACTORS . . . 8

TABLE OF CONTENTS (CONTINUED)

|   |   | PAGE |
|---|---|---|
| C. | DEFENDANT WONG'S REQUESTS FOR DEPARTURES OR LENIENCE LACK A FACTUAL BASIS IN THE RECORD, OR DO NOT CONSTITUTE EXCEPTIONAL CIRCUMSTANCES | 9 |
|   | 1. Loss of Time Between Crimes | 9 |
|   | 2. Aberrant Behavior | 10 |
|   | 3. To Enable Defendant To Make Restitution | 10 |
|   | 4. Excellent Employment History | 10 |
|   | 5. Defendant Responsible for Only Part of Loss | 11 |
|   | 6. Defendant Subject to Abuse In Prison | 11 |
|   | 7. Totality of the Circumstances and Sua Sponte Departures | 11 |
| IV. | CONCLUSION | 12 |

TABLE OF AUTHORITIES

STATUTES                                                PAGE(S)

18 U.S.C. § 371 . . . . . . . . . . . . . . . . . . . . . . 1
18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . 8, 11

# I.

# INTRODUCTION

Defendant Greg Wong ("Wong") is to be sentenced for one count of conspiracy to commit federal education funding fraud, in violation of 18 U.S.C. § 371, in connection with millions of dollars in fraudulent education grants procured from the United States Department of Education ("DOE").

The government calculates the United States Sentencing Guidelines as follows:

| | | | |
|---|---|---|---|
| Base Offense Level | : | 6 | [U.S.S.G. § 2F1.1(a)] |
| Specific Offense Characteristics | | | |
| Loss (more than $2,500,000) | : | +13 | [U.S.S.G. § 2F1.1(b)(1)(N)] |
| More than minimal planning | : | +2 | [U.S.S.G. § 2F1.1(b)(2)] |
| Adjustments | | | |
| Acceptance of Responsibility | : | -3 | [U.S.S.G. §3E1.1 (b)] |

In addition, the government does not oppose a downward departure of two offense levels for overstatement of loss. Except for the issue of "abuse of trust," where the government seeks no enhancement, these sentencing calculations are in accord with the guidelines calculations of the Pre-Sentence Report ("PSR") for defendant Wong, which defendant Wong has not disputed. The government's calculations result in a **total offense level of 16** that, combined with a **Criminal History Category of I**, result in a sentencing range of **21 to 27 months**.

1

1  Based on the statutory sentencing factors, discussed below,
2  the government believes that a sentence at the low end of the
3  guidelines is appropriate.

## II.

## FACTS

The following summary of facts about the scheme is adopted from the factual basis to defendant Wong's plea agreement.

A. The Department of Education Student Grant Programs

The federal government, through the DOE, provides financial aid funds to students. Federal financial aid funds provided to students include outright grants, that is, federal funds that a student does not have to repay — including Pell Grants and Supplemental Educational Opportunity Grants (collectively "Education Grants"). In order to be awarded Education Grant funds, a student must be enrolled in an eligible program at an eligible institution (and must also demonstrate individual financial need). DOE certifies institutions and programs as eligible if DOE determines that the institutions and programs meet certain criteria set forth in the Code of Federal Regulations. Education Grants are sent to the educational institution that an aid-eligible student is attending and deposited into an escrow account that the school must use only for transactions involving financial aid funds.

B. Institutions And Related Entities

San Gabriel Polytechnic, doing business as ("d.b.a.") California Business Institute ("CBI"), was an institution located

in El Monte, California. CBI was eligible to receive Education Grant funds from approximately May 7, 1987 until it lost its eligibility on approximately November 7, 2001.

United Computer College, Inc., d.b.a. United Education and Computer College ("UECC"), was an institution located in Los Angeles, California. UECC was eligible to receive Education Grant funds from approximately March 27, 1996 until it lost its eligibility on approximately August 17, 1998.

Global Consulting Services ("Global") was an entity associated with UECC. Global was formed to conceal the receipt by UECC of Education Grant funds from CBI.

Mesa Institute ("Mesa") was an institution located in Orange, California. Mesa never was eligible to receive Education Grant funds.

Max Affiliates was an entity associated with Mesa. Max Affiliates was formed to conceal the receipt by Mesa of Education Grant funds from CBI.

C. The Defendant And Coconspirators

Defendant Wong was the owner and Chief Executive Officer of CBI from in or before 1998 until approximately November 2001.

Coconspirator Julie Diaz ("coconspirator Diaz") was the Financial Aid Officer at CBI from approximately October 1998 until approximately September 2001. During this time, defendant was also employed part-time at UECC.

Coconspirator Deanne Kay Williams ("coconspirator Williams") was a financial aid consultant for CBI from in or before October

1998 until 2001, and was also a paid consultant at UECC and Mesa.

Coconspirator Lanny Paul Nichols ("coconspirator Nichols") was the owner and director of Mesa and was the director of CBI from approximately October 1998 until approximately July 2001.

Coconspirator H.S.Y. ("coconspirator H.S.Y.") was the owner of UECC from in or before 1998 until in or after September 2001.

D. The Scheme to Misapply Education Grant funds

Beginning in about October 1998, and continuing until around September, 2001, defendant Wong and coconspirators Diaz, Williams, H.S.Y., and Nichols, and others agreed to and did carry out a scheme to enable UECC and Mesa students to obtain Education Grant Funds to be paid to UECC and Mesa, even though UECC and Mesa were not eligible to receive Education grant funding. The scheme in essence was to be carried out by falsely making it appear to DOE that UECC and Mesa students were attending CBI and, thus, were eligible to receive Education Grant funds. Defendant Wong and the other coconspirators knew that the students were not attending CBI and that the scheme was illegal.

Defendant Wong and coconspirators Diaz, Williams, and Nichols operated, and assisted in operating, CBI and made sure CBI remained eligible to receive Education Grant funds from DOE.

On August 18, 1999 coconspirator Julie Diaz sent a letter to defendant Wong outlining a plan to cover up the receipt of education grant funds by CBI for UECC students.

Defendant Wong and coconspirators Williams, H.S.Y., and Nichols created and maintained a written contract between CBI and

4

UECC, under which CBI would pay UECC to provide classes to CBI students. In doing so, however, the conspirators knew that, in fact, UECC would not be providing classes to CBI students and that the contract would falsely make it appear that CBI would be making payments to UECC that were legitimate and consistent with DOE regulations. Defendant Wong and coconspirators Nichols and Williams created a similar contract for the same reason between CBI and Mesa.

Defendant Wong and coconspirators Diaz, Nichols, Williams, and H.S.Y. recruited and enrolled students at Mesa and UECC and arranged for FAFSA applications for Education Grant funds to be submitted to DOE that would falsely state to DOE that students attending UECC and MESA were attending CBI. In filling out the applications, students sometimes were asked to leave blank the identity of the institution. Coconspirator Diaz and others then would enter CBI's name or institution code onto the FAFSA applications. On other occasions, UECC and Mesa students were told to write in the identifying information for CBI. Coconspirator Diaz and others would request through RGM that DOE disburse funds to CBI for students actually attending UECC and Mesa. A portion of those funds then would be paid by CBI to UECC and Mesa.

Defendant Wong and coconspirators Williams and H.S.Y. used Global to conceal the payment of Education Grant funds from CBI to UECC by falsely making it appear that Global and UECC were providing services to CBI. Coconspirator Diaz and others created

false invoices to make it appear that Global and UECC were providing services to CBI.

On January 31, 2000, defendant Wong sent a memo to coconspirator Diaz requesting a report about, among other things, the amounts of Pell Grant funds paid to CBI and UECC in 1999, and requesting various other information about payments made to, and received by CBI, from UECC and Global. That same day, coconspirator Diaz filled out a response to defendant Wong's memo in which coconspirator Diaz reported to defendant Wong, among other things, the amounts of Pell Grant funds paid to CBI and UECC in 1999, and provided other information about payments made to, and received by CBI, from UECC and Global.

On June 15, 2000, coconspirator Nichols sent a memo to defendant Wong and coconspirator Williams concerning, among other things, how to allocate Education Grant funds to Global.

Defendant Wong and coconspirators Williams and Nichols used Max Affiliates to conceal the payment of Education Grant funds from CBI to Mesa by falsely making it appear that Max Affiliates and Mesa were providing services to CBI. Coconspirator Diaz and others created false invoices to make it appear that Max Affiliates and Mesa were providing services to CBI.

Coconspirators H.S.Y. and Nichols made payments to defendant Wong and CBI. The amount of the payments was based on the amount of Education Grant funds paid to CBI for UECC and Mesa students and was calculated using rates previously agreed upon by defendant Wong and coconspirators H.S.Y., Nichols, and Williams.

6

|   |   |
|---|---|
| 1 | As a result of the conspiracy, CBI received from the DOE at |
| 2 | least $2,158,844 in Education Grant funds on behalf students |
| 3 | actually attending UECC and $739,049 in Education Grant funds on |
| 4 | behalf of students actually attending Mesa. |

## III.

## DISCUSSION

A. <u>THE GOVERNMENT CALCULATES THE SENTENCING GUIDELINES TO INCLUDE AN ADDITIONAL DOWNWARD DEPARTURE OF TWO OFFENSE LEVELS FOR OVERSTATEMENT OF LOSS</u>

Defendant Wong has not claimed any error to the sentencing factors driving the PSR's calculation of his offense level, including the loss to the government of $2,897,893. The government, which is bound by its plea agreement with defendant Wong not to seek an adjustment for "abuse of trust" as applied by the PSR, concurs in the PSR's remaining sentencing calculations.

In addition, the government has agreed as part of the plea agreement in this case not to oppose a request by defendant Wong for a two-level downward departure on the basis that the loss amount overstates the seriousness of the offense for the following reason: While the students for whom defendant Wong and his coconspirators fraudulently obtained Department of Education grant funding were not students at CBI, the students were actually enrolled at another educational institution and receiving instruction at that institution.

Accordingly, the guidelines range is between 21 and 27 months, based on a total offense level of 16 and a Criminal History Category of I.

7

B.  APPLICATION OF THE STATUTORY SENTENCING FACTORS

The government addresses here only the most salient of the sentencing factors under 18 U.S.C. § 3553(a).

1.  **The nature and circumstance of the offense and the history and characteristics of the defendant (§ 3553(a)(1)).** In this case, defendant Wong committed a crime that caused almost three million dollars in loss and involved years of repeated criminal activity. Defendant was the owner of one of the businesses that received the student aid payments. The egregiousness of this conduct, weighed against the lack of a criminal history before or after the offense, is adequately considered in the sentencing guidelines calculation.

2.  **Reflecting the seriousness of the offense, promoting respect for the law, and to provide just punishment for the offense. (§ 3553(a)(2)(A)).** If there was any doubt about the seriousness of fraud against the government, there is no longer, given the nation's deepening budget deficits and recession.

3.  **General Deterrence (§ 3553(a)(2)(B).** A custodial sentence in this case will serve as a deterrent in the student aid business, a reminder that fraud has serious consequences.

4.  **Preventing Unwarranted Sentencing Disparities Between Defendants (§ 3553(a)(6)).** The Court is required to take into consideration preventing unwarranted sentencing disparities between defendants. In this regard, the Court's sentencing last year of defendant Wong's co-conspirator, Williams, to a term of 5 months imprisonment and 5 months home confinement may now be a

factor favorable to defendant. Nonetheless, defendant Wong did not accept responsibility in the same timely manner as coconspirator Williams, who pleaded early and promptly to an information, rather than forcing the government to indict her and to begin preparations for trial. Moreover, the sentencing guidelines that the Court is required to consider is the typical and appropriate manner in which to minimize sentencing disparities between defendants generally who commit the same type of fraud, and so the Court should not depart too dramatically from the resulting range. Viewed in light of these considerations of guidelines equity, the Court imposed on coconspirator Williams a most lenient sentence, and should not now feel obligated to view coconspirator Williams' sentence as the sole benchmark against which the judge defendant Wong -- rather than the general class of fraud defendants with similar calculations under the sentencing guidelines.

C. <u>DEFENDANT WONG'S REQUESTS FOR DEPARTURES OR LENIENCE LACK A FACTUAL BASIS IN THE RECORD, OR DO NOT CONSTITUTE EXCEPTIONAL CIRCUMSTANCES</u>

In defendant Wong's sentencing position, he lists numerous grounds for this Court to depart from the sentencing guidelines or otherwise to be lenient in imposing sentence. Defendant Wong's arguments lack a factual basis in the record, and/or do not constitute exceptional circumstances.

1. **"Loss of Time Between Crimes"**

Under a caption heading "Loss of Time Between Crimes," defendant Wong cites to various cases in support of departures,

but the relationship between the facts of this case and the departures recognized in those cases is not apparent.

### 2. Aberrant Behavior

Defendant Wong suggests that his conduct in this case constitutes "aberrant behavior," a possible ground for departure recognized in many cases. However, defendant Wong's conduct in the scheme to which he pleaded guilty defies characterization as "aberrant behavior" because the individual fraudulent acts contained in defendant Wong's factual basis spanned years and involved the creation of many types of fraudulent documents.

### 3. "To Enable Defendant To Make Restitution"

Under a caption heading "To Enable Defendant To Make Restitution" defendant Wong cites to various cases that do not, in the end, appear to support the caption heading's proposition or to relate in any way to the facts of this case. In any event, there is no reason to believe that defendant Wong's service of a modest prison term would render him unable to make the restitution ordinarily expected of convicted fraud defendants. To the contrary, defendant Wong has a net worth of over $594,000 consisting of IRA accounts and real estate (PSR ¶¶ 103-13), and what he calls in his brief an "excellent employment history."

### 4. Excellent Employment History

Defendant Wong cites his "excellent employment history" as a ground for departure. This may be true -- setting aside his conduct of affairs at CBI at issue in this case. However, even if true, this would not constitute "exceptional circumstances"

but, rather, simply the prologue to his being in a position to use CBI to defraud the government out of nearly $3 million in federal education program money.

    5.    "Defendant Responsible for Only Part of Loss"

Defendant Wong seeks a departure based on an argument that he is responsible for only part of the loss. In fact, in this case, defendant Wong was at the very center of the fraud as the owner of CBI. He was responsible for all losses. He is fortunate not to have been assessed a leadership role adjustment on the basis that there were, in fact, multiple others culpable just as much as he was in the scheme.

    6.    "Defendant Subject to Abuse In Prison"

Defendant Wong suggests he would be subject to abuse in prison, but there is no factual basis stated for this argument. Certainly, defendant Wong is not "notorious," as was the defendant in the cited case.

    7.    Totality of the Circumstances and Sua Sponte Departures

Defendant cites two more grounds for departure in the totality of the circumstances and the district court's inherent power to depart sua sponte. These arguments cite no factual basis, although the government of course acknowledges that this Court has the discretion to impose any sentence within the statutory maximum based on its assessment of the statutory sentencing factors in 18 U.S.C. § 3553(a).

## IV.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court impose a sentence at the low end of the guidelines range, _i.e._, 21 months imprisonment.

DATED: November 10, 2008          Respectfully submitted,

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

_/s/_
BRUCE H. SEARBY
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA